UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-cv-23370-JLK

AIDE SEPULVEDA TORRES,

    Plaintiff,

v.

CARNIVAL CORPORATION,
*a foreign corporation d/b/a*
*CARNIVAL CRUISE LINES*

    Defendant.
_____/

## ORDER GRANTING MOTION TO STRIKE
## PLAINTIFF'S LIABILITY EXPERT KEVIN A. RIDER, PH.D.

THIS CAUSE comes before the Court upon Defendant's Motion to Strike Opinions of Plaintiff's Liability Expert Kevin A. Rider, Ph.D. (D.E. 45), filed June 6, 2014. The Court is fully briefed on the matter.[1] Upon review of the record and careful consideration, the Court finds that the Motion should be granted.

### I. BACKGROUND

This is a simple case. Plaintiff was a passenger on Defendant's cruise ship on July 24, 2011. On that day, as she was disembarking the vessel "through an open passageway onto the exterior deck…[she] tripped and fell over a raised threshold that had been covered over with a mat or similar material, which obscured, disguised, or hid the raised

---

[1] Plaintiff filed a Response to the Motion of June 27, 2014 (D.E. 54) and Defendant filed a Reply on July 10, 2014 (D.E. 61)

threshold." Compl. ¶ 7. That is the key event. Plaintiff brings this action in negligence against Defendant for covering the raised threshold with a material, failing to properly assist Plaintiff and supervise the disembarkation produce, and failing to warn passengers of the hazard. Compl. ¶ 9.

Plaintiff retained Kevin A. Rider, Ph.D. to "render opinions related to the liability issues in this case." D.E. 54 at 3. Rider's ten professional opinions in this case are set forth in his report. D.E. 45-1 at 10. They fall into three broad categories: 1) those having to do with Defendant's flooring [nos. 1-7]; 2) one regarding lighting [no. 8]; and 3) one regarding warnings [no. 9].[2] Rider's final opinion is a summation. Defendant moves to exclude Rider.

## II. LEGAL STANDARDS

The threshold consideration in all evidentiary issues is relevancy. *See* Fed. R. Ev. 402. Federal Rule of Evidence 403 permits the court to exclude otherwise relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Testimony by a witness who has been qualified as an expert is governed by Federal Rule of Evidence 702. The Eleventh Circuit has articulated a three-pronged assessment for admissibility of expert evidence. The Court must consider whether:

---

[2] At his deposition, Rider clarified that he now knows the mat was secured at not loose; when writing his report, he had assumed the mat was loose. He states the fact that the mat was secured does not change his conclusions. D.E. 45-1 at 36:11-38:9.

2

> (1) the expert is qualified to **testify competently** regarding the matters he intends to address; (2) the **methodology** by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony **assists the trier of fact**, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)) (emphasis added).

Federal Rule of Evidence 702(a) requires that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue…" The Federal Rules of Evidence's Advisory Committee Notes state that determining the appropriateness of expert testimony involves a "common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702 Advisory Committee Notes (1972 Proposed Rules).

The district courts perform a "gatekeeping" function. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993). An expert's opinion should be based on scientific principles; the Court is not required to admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec Co. v. Joiner*, 522 U.S. 136, 146 (1997). "The courtroom is not the place for scientific guesswork…" *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002) (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir.1996)).

"Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. Expert testimony must have a proper "fit" with the facts of a case. *Id.* at 591. Under the helpfulness prong, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262.

### III. ANALYSIS

The only clouds darkening the clear waters of this case are the attempts to introduce expert testimony on the floor features, lighting, and warnings. This testimony unnecessarily complicates the case.

Walking. That is the action at the heart of this case. Walking is something almost all individuals understand. Rider derives numerous conclusions from his analysis of the carpet, all to say that Plaintiff tripped because of a condition on the ground. *See* D.E. 45-1 at 15, nos. 1-7. His report states, "[W]hen walkways are improperly designed and maintained, pedestrians may be exposed to dangerous conditions." *Id.* at 6. This is not the kind of assertion which requires expert testimony; it is neither a stretch nor even a hop of logic to say that humans may trip if they encounter an obstacle in their path. Jurors can easily understand the simple mechanics of walking and the various reasons one may fall, including tripping on a carpet.

People other than Plaintiff's proposed expert also frequently encounter changes in lighting. Rider writes in his report, "[W]hen people encounter significant differences in the amount of light from one area to another, the eyes require time to fully adjust to the

change in illumination." *Id.* at 11; at 15, no. 8. He concludes that "the change in brightness between the interior and exterior of the doorway inhibited Ms. Torres' ability to detect and identify the trip hazard." *Id.* at 11. The testimony is essentially that when one goes from a lighted area to a darkened area, the eye takes time to adjust and during that interval it is more difficult to see. An expert is neither necessary nor helpful for this fact. Changes in brightness are encountered everyday by all individuals fortunate enough to have eyesight. This understanding of the human eye's basic reactions to changes in light is innate to having eyesight. The Court is skeptical why an expert would ever testify to such evidence.

Rider also opines on the efficacy of Defendant's warnings. *See Id.* at 15, no. 9. He states, "The caution cones used near the incident doorway do not effectively alert a pedestrian to the unexpected trip hazard of the carpet." *Id.* at 13. There is no specialized knowledge needed to look at cones and asses their ability to warn. An average lay person can listen to lay testimony about placement, color, size, etc. of cones and decide whether a warning was appropriate or not. Rider is not assisting the jury understand matters which they would not otherwise comprehend.

Rider has no greater and no less experience than the general public in the matters relevant to this case. As he himself states in his report, "Walking is a common activity in daily living..." *Id.* at 5. A jury can determine quite well for itself how the Defendant acted in this case and what relationship, if any, those actions have to Plaintiff's injuries. All of the issues to which Rider would testify are well within the understanding of the

average lay person. To permit expert testimony on issues where the jury can easily form an opinion would be to invade the province of the jury. The Court believes the jury is a capable and competent, and should be respected as such. Expert testimony is not helpful on issues this astute body can understand.

At best, Rider's testimony would be superfluous. At worst, the testimony would confuse the jurors. Expert testimony inherently has a "powerful and potentially misleading effect." *Frazier*, 387 F.3d at 1263. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.* Rider's testimony would needlessly complicate a simple case. The substantial risk of confusing the jury and wasting time meets the criteria set forth in Federal Rule of Evidence 403 for excluding the evidence.

The testimony is best excluded at this juncture and not left to a "weight of the evidence" argument at trial. Such an approach would permit the evidence under the theory that holes in the proposed expert's testimony are to be considered by the jury for a credibility determination. *See e.g. Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1194 (11th Cir. 2011) (permitting expert evidence, finding arguments attacked "the weight and persuasiveness" of the testimony, not its admissibility). This is a run-around on the Court's gatekeeping function. The district courts are required to determine competency, helpfulness, and reliability of the proposed expert. Facts calling into question any of the three prongs are not arguments over persuasiveness but are disputes

the Court is required to address in the first instance. It would make the exception swallow the rule if, in cases like this, the "weight of the evidence" argument won out over the clear law requiring the Court to be a gatekeeper and the jury's fundamental role to the American legal process.

Moreover, Rider's methodology is questionable. He never investigated the subject vessel and felt it was unnecessary to do so. D.E. 45-5 at 45:16-48:14. His analysis of the carpet is based on comparisons of swatches exemplary of the carpet believed to be on the vessel at the time Plaintiff fell. With regard to his opinions on lighting, he did not quantify the differences in lighting between the interior and exterior of the ship. *Id.* at 75:21-23. His lighting analysis is based on photographs and depositions even though he acknowledges that photographs do not adequately depict how ambient light is seen by the human eye. *Id.* at 74:2-1. This lack of first-hand investigation makes the relevance of Rider's experiments quite attenuated. The relationship between Rider's findings and Plaintiff's fall is a long-distance one. Accordingly, apart from his lack of helpfulness to the trier of fact, his opinions are not based on a sufficiently reliable methodology to merit their inclusion at trial.

## IV. CONCLUSION

Accordingly, upon a careful review of the record and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** that Defendant's Motion to Strike (**D.E. 45**) be, and the same is, hereby **GRANTED**. Kevin A. Rider, Ph.D.'s name is hereby **STRICKEN** from Plaintiff's list of trial witnesses.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 17th day of July, 2014.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:  All Counsel of Record